## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| **v.** | : **Case No. 1:23-cr-0185-APM** |
| | : |
| **RAYMUND CHOLOD,** | : |
| **Defendant.** | : |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Defendant Raymund Cholod. There can be no dispute that the Court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Cholod requests the Court to impose a sentence which properly reflects a (final) determination of the Advisory Sentencing Guidelines, as well as the other 18 U.S.C. §3553(a)(1-7) factors, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Furthermore, the Court should take into consideration a downward variance based on his aberrant behavior on January 6, 2021. *See* U.S.S.G. § 5K2.20.

Respectfully, Mr. Cholod asks the Court to impose a sentence of, essentially, a short term of imprisonment, one year of supervised release, and 150 hours of community service.

-1-

I.     **Case Background**

On May 31, 2023, a federal grand jury in the District of Columbia returned a seven-count Indictment [ECF 27] charging Raymund Joseph Cholod, aka: "Raymond Cholod," with:

(Count 1) Civil Disorder, in violation of 18 USC § 231(a)(3);

(Count 2) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 USC § 111(a)(1) and (b);

(Count 3) Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 USC § 111(a)(1);

(Count 4) Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 USC §§ 1752(a)(1) and (b)(1)(A);

(Count 5) Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 USC §§ 1752(a)(2) and (b)(1)(A);

(Count 6) Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 USC 1752(a)(4) and (b)(1)(A); and,

(Count 7) Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 USC § 5104(e)(2)(F).

Mr. Cholod was arrested on November 3, 2022, in Miami. Florida. He was presented in this U.S. District Court November 10, 2022. He was released on a personal bond with standard conditions and stand alone (GPS) monitoring. [ECF 11]

He remains released and it is counsel's understanding he has been in compliance with all conditions since November 10, 2022.

On February 9, 2024, a Superseding Indictment issued [ECF 38] charging:

(Count 1) Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 USC § 111(a)(1).  On February 12, 2024, he tendered his voluntary guilty plea to the Court, which was accepted. Pursuant to the plea agreement, the government will ask the Court to dismiss the Indictment at the sentencing hearing.

A sentencing hearing is scheduled for July 2, 2024, at 9:30 a.m..

The U.S. Probation Office is recommending term of imprisonment of 51 months, based a guideline range of imprisonment of 51-63, (offense level of 33 and a criminal history category of I). *See* USPO Sentencing Recommendation. [ECF 48] The government is asking the Court to impose a 51 month prison term. *See* Government's Sentencing Memorandum. [ECF 49]

Mr. Cholod and counsel have received and reviewed the (draft & final) Presentence Investigation Report. ("PSR"). On May 25, 2024, counsel filed the Obligation & Response to Presentence Report Form (draft version) with a letter to USPO Aidee V. Gavito. [ECF 45]

## II.    Mr. Cholod Should be Awarded an Acceptance of Responsibility Deduction Under USSG § 3E1.1

Base on representations made by the government, the PSR writer did not recognize any acceptance of Responsibility" deduction pursuant to USSG § 3E1.1. PSR ¶¶ 43-44. Mr. Cholod respectfully disagrees with both the government and the

Probation Office on this issue, and the Court should award a deduction of 3 points for acceptance of responsibility. In his view, during the interview with the government and case agents on May 13, 2924, Mr. Cholod did in fact truthfully admit his conduct comprising the offense of conviction. He did not willfully or intentionally attempt to minimize his actions on January 6th.  Based on his personal recollection, he was explaining to the government the circumstances surrounding his actions on January 6, 2021. He is not "running away" from his conduct that day, and he did clearly admit to all facts as stated in the Statement of Offense in support of the plea agreement.[ECF 43]  This, alone, should satisfy the USSG § 3E1.1, Application Note 1(A).

He did not ask for a trial, nor did he file any substantive pre-trial motions. As stated in USSG § 3E1.1, Application Note 3, "Entry of a plea of guilty prior to commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction . . . will constitute significant evidence of acceptance of responsibility." Further, under USSG § 3E1.1, Application Note 5, "The sentencing judge is in a unique position to evaluate the defendant's acceptance of responsibility." *See United States v. Speight*, 726 F. Supp. 861, 865 (D.D.C. 1989) ("Defendant's observable remorse and his forthright admission of his involvement at the time of the original sentencing on July 27, 1989, as well as his plea of guilty demonstrates his acceptance of responsibility."); *United States v. Ingram*, 816 F. Supp. 26, 34 (D.D.C. 1993) ("The prosecution's about-face on the two-level reduction for acceptance of responsibility violates a solemn commitment of the United States.").

Therefore, pursuant to USSG § 3E1.1., the Court should award acceptance of responsibility deduction points notwithstanding the government's assertion that he was not being truthful during the May 13th interview.

### III.   Framework And The Guidelines Are Not Mandatory

The Court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. In early 2005, the United States Supreme Court declared that the Guidelines are advisory, rather than mandatory. *United States v. Booker* 543 U.S.220, 125 S.Ct. 738, 160 L. Ed 2d 621 (2005). Although the Court must consider the Guidelines in imposing a reasonable sentence, the Guidelines are now merely "advisory," constituting just one factor to be considered on equal footing with the other sentencing factors found in 18 U.S.C. §3553 (a). *See id.* at 757,764 – 67, 790.

The *Booker* Court also re-emphasized that the primary sentencing mandate of §3553 (a) is that courts must impose the least amount of imprisonment and sentence necessary to achieve the statutory purposes of punishment-justice, deterrence, incapacitation, and rehabilitation; the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (18 U.S.C. §3553(a)(2). 18 U.S.C. §3553(a).[1] This represents a cap above which the Court is

---

[1]   18 U.S.C. §3553 (a) states, in pertinent part, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider – (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the

*statutorily prohibited* from sentencing - even when a far greater sentence is recommended by the advisory sentencing guidelines. *See, United States v. Denarli*, 892 F.2d 2698, 276-77 (3rd Cir. 1989)(Becker, J., concurring in part, dissenting in part). In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that the sentencing guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553 (a). In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009). Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a). Moreover, as the Supreme Court reiterated, in imposing sentence, "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (Mar. 2, 2011).

### IV. Nature and Circumstances of the Offense and History and Characteristics of Mr. Cholod

The Court must consider the specific history and character of the defendant and the specific circumstances and seriousness of the offense and impose no more of a

---

public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."Furthermore, paragraph (3) of this subsection directs the Court to consider "the kinds of sentences available."

sentence than is necessary to promote respect for the law, provide just punishment and treatment, afford adequate deterrence, protect the public, allow restitution to victims, and avoid unwarranted inconsistency among similarly situated defendants. 18 U.S.C. § 3553(a). The Court is no longer limited in the factors it may consider, and may consider any factors it believes relevant to tailoring an individualized and appropriate sentence.[2]

The personal characteristics, including personal and family data, physical condition, mental and emotional health, substance abuse, education, employment and financial history of Mr. Cholod also encourage the sentencing proposal herein. These factors are discussed more fully in the PSR, ¶¶ 59 85.

As noted, Mr. Cholod, born in Buffalo, NY, is 54 years old, his father was a WWII political refuge and his mother was a homemaker. He has three siblings and he was married for 14 years n-between 1995 to 2019. This union produced two children, now ages 23 & 16.

Mr. Cholod reports he is currently in good health however he has suffered from depression since 2005.  He does not take any medications for depression. He does not drink alcohol nor does he use illegal drugs. He has a bachelors's degree (1997) from

---

[2]

Under 18 U.S.C. §3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.

the University of Buffalo, majoring in Mechanical engineering. He is fluent in German and has never served in the U.S. Military. In addition to his full-time voluntary service at a Homeless Shelter in Tampa Florida, (see below) he works part-time at a McDonald's restaurant. He also works, as needed, for repairing tree-service equipment, lifts, tractors, etc. Earlier, he worked as an engineer with several companies, in Cleveland, Mississippi, and in Houston, Texas.

Mr. Cholod has no "hard" convictions in his past. He has incurred a series of minor traffic infractions during the past 7 years, all of which were resolved by way of fines. His criminal history category is I.

According to the PSR, he does not have the ability to pay a fine. PSR ¶ 85.  He currently resides at a Homeless Shelter in Tampa Florida and he has court-appointed counsel. Under this scenario, Mr. Cholod asks the Court to waive any fine in his case.

Attached is a letter from Adolphus Parker. As the CEO of Homeless Helping Homeless Organization in Tampa Florida, Mr. Parker informs the Court that Mr. Cholod, who is a resident, is ". . . a tremendous asset . . . serves full time voluntary as staff . . . his primary function is as well to do maintenance on all of ur properties . . . I can also vouch for his character that he is an honest individual with integrity and a joy to work with."

## V.    <u>Respect for the Law and Deterrence</u>

Mr. Cholod appeared (VTC) in a timely manner for all court proceedings, including the in-person plea hearing on February 12, 2024. His personal history and characteristics as described throughout this memorandum, as well as noted in

"support" letters from his friends, it is improbable that he will participate in dishonest, reprehensible or criminal activities in the future. There are numerous reasons to be optimistic that Mr. Cholod will not engage in further criminal behavior, including the support of his friends, he is now 54 years old and determined to be a productive and responsible member of society, the promise that others have seen in him, as well as his own expected statements to this Court at the sentencing hearing about the hope he has for his future. A lengthy prison sentence would have no greater effect toward the goals of sentencing than a short period of imprisonment as proposed herein.

## VI.   The Need to Avoid Unwarranted Sentencing Disparities, and Impose A Sentence That Reflects The Seriousness of the Offense

There is no dispute that Mr. Cholod's criminal conviction is serious and will likely have irreparable unintended consequences. Any lengthy prison term would nonetheless be an inappropriate sentence for Mr. Cholod. And, the Court should not impose a sentence which would result in an unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Counsel has surveyed the Department of Justice Table of sentences for January 6th defendants. *See* Attachment A. As of June 10, 2024, thirty-eight defendants have been convicted of one count of 18 U.S.C. § 111(a)(1), of which the average length of incarceration is 31.63 months:

1.      Mark Leffingwell, 1:21-CR-00005-ABJ, 6 months' incarceration 24 months' supervised release 200 hours' community service $2,000 restitution.

2.      Kevin Creek, 1:21-CR-00645-DLF, 27 months' incarceration 12 months' supervised release $2,000 restitution.

3.      Cody Mattice, 1:21-CR-00657-BAH, 44 months' incarceration 36 months' supervised release $2,000 restitution.

4.      James Mault, 1:21-CR-00657-BAH, 44 months' incarceration 36 months' supervised release $2,000 restitution.

5.      Mark Ponder, 1:21-CR-00259-TSC, 63 months' incarceration 36 months' supervised release $2,000 restitution Mental health treatment.

6.      Howard Richardson, 1:21-CR-00721-CKK, 46 months' incarceration 36 months' probation $2,000 restitution.

7.      Kyle Young, 1:21-CR-00291-ABJ, 86 months' incarceration 36 months' supervised release 100 hours' community service $2,000 restitution.

8.      Alburquerque Cosper Head, 1:21-CR-00291-ABJ, 90 months' incarceration 36 months' supervised release $2,000 restitution.

9.      James McGrew, 1:21-CR-00398-BAH, 78 months' incarceration 36 months' supervised release $5,000 fine.

10.     Michael Eckerman, 1:21-CR-00623-CRC, 20 months' incarceration 24 months' supervised release $2,000 restitution.

11.     Ricky Willden, 1:21-CR-00423-RC, 24 months' incarceration 36 months' release $2,000 restitution.

12.     Michael Dickinson, 1:21-CR-00649-JDB, 20 months' incarceration 36 months' supervised release $2,000 restitution.

13.     Landon Copeland, 1:21-CR-00570-APM, 36 months' incarceration 36 months' supervised release.

14.     Barton Wade Shively, 1:21-CR-00151-JMC, 18 months' incarceration 36 months' supervised release $2,000 restitution.

15.     Mickael Slye, 1:22-CR-334-JEB, 30 months' incarceration 18 months' probation $2,000 restitution.

16.     James Robert Elliott, 1:21-CR-00735-RCL, 37 months' incarceration 24 months' supervised release $2,000 restitution.

17.     Cale Clayton, 1:22-CR-00139-RCL, 30 months' incarceration 24 months' supervised release.

18.     James McNamara, 1:23-CR-00119-ABJ, 12 months' incarceration 24 months' supervised release $2,000 restitution.

19.     Joseph Layden, 1:22-CR-00314-TNM, 6 months' incarceration 12 months' supervised release 40 hours' community service  $2,000 restitution.

20.     Salvatore Vassalo, 1:22-CR-00325-ABJ, 18 months' incarceration 36 months' supervised release $2,000 restitution.

21.     Michael Lockwood, 1:23-CR-00146-RDM, 12 months' and 1 day incarceration 36 months' supervised release $2,000 restitution.

22.     Kaleb Dillard, 1:23-CR-00049-JMC, 10 months' incarceration 12 months' supervised release $5,500 fine $36,238.55 restitution.

23.     Bobby Russell, 1:23-CR-00029-APM, 12 months' & 1 day incarceration 24 months' supervised release 6 months' home detention 250 hours' community service $2,000 fine.

24.     Jamie Buteau, 1:21-CR-00489-RDM, 22 months' incarceration 24 months' supervised release $2,000 restitution.

25.     Zachary Johnson, 1:22-CR-00011-RJL, 42 months' incarceration 36 months' supervised release $2,000 restitution.

26.     Dillion Herrington, 1:23-CR-00199-BAH, 37 months' incarceration 36 months' supervised release $2,000 restitution.

27.     Justin Dee Adams, 1:22-CR-00350-JEB, 17 months' incarceration 12 months' supervised release $2,000 restitution.

28.     Ryan Swoope, 1:23-CR-00020-TNM, 51 months' incarceration 24 months' probation $2,000 restitution.

29.     Jonathan Grace, 1:23-CR-00138-RBW, 24 months' incarceration 36 months' supervised release $5,000 fine $2,000 restitution.

30.     Clayton Mullins, 1:21-CR-00035-RC, 30 months' incarceration  36 months' supervised release $49,764 fine $32,165.65 restitution.

31.     Riley Kasper, 1:22-CR-00148-RCL, 37 months' incarceration  24 months' supervised release $2,000 restitution.

32.     Steven Miles, 1:22-CR-00136-JMC, 24 months' incarceration  12 months' supervised release $2,000 restitution.

33.     Jason Farris, 1:23-CR-00068-AMJ, 18 months' incarceration  24 months' supervised release $2,000 restitution.

34.     Clifford Mackrell, 1:21-CR-00276-CKK, 27 months' incarceration  24 months' supervised release.

35.     Michael Mackrell, 1:21-CR-00276-CKK, 27 months' incarceration 12 months' supervised release  $2,000 restitution.

36.     Adam Jackson, 1:22-CR-00230-RC, 52 weeks' intermittent confinement 52 weeks' home detention 36 months' probation $4,392 fine $2,000 restitution.

37.     Joshua Portlock, 1:22-CR-00067-CJN, 20 months' incarceration  24 months' supervised release $2,000 restitution

38.     Matthew Brackley, 1:24-CR-00009-CJN, 15 months' incarceration 24 months' supervised release $1,000 fine $2,000 restitution

Furthermore, Mr. Cholod's case is factually analogous to *United States v. Jackson*, 1:22-CR-00230-RC. There, Jackson "assaulted law enforcement officers first by hurling a large, red/orange cone-like object at them, and then, by charging at and ramming them with a police riot shield." *Id.* Jackson was sentenced to: 52 weeks' intermittent confinement, 52 weeks' home detention, 36 months' probation, $4,392 fine, and $2,000 restitution. Here, Mr. Cholod hurled a stick at police officers, even though he did not thereafter charge them. Therefore, Mr. Cholod should receive a similar sentence.

Other defendants who punched or sprayed police officers with chemical irritants received 18-24 months' incarceration. *United States v. Eckerman*, 1:21-cr-

00623-CRC-1 (defendant caused a police officer to fall down steps); *United States v. Wilden*, 1:21-cr-00423-RC, (defendant sprayed multiple police officers with a chemical irritant and then threw the empty canister at the officers); *United States v. Shively*, 1:21-cr-00151-JMC, (defendant punched two police officers, one of which in the head); *United States v. Vassallo*, 1:22-CR-00325-ABJ, (defendant "grabbed and pushed" a police officer).

Comparing the thirty-eight other January 6th defendants who were convicted of one count of 18 U.S.C. § 111(a)(1), the probation officer's recommended sentence of 51 months' incarceration is inappropriate for two reasons.

First, 51 months' incarceration would be longer than 32 of the 38 sentences. It would suggest that Mr. Cholod's behavior is comparatively worse than other defendants, which is not true. The worst cases are characterized by repeatedly making physical contact with police officers, which did not happen here. *See United States v. Ponder*, 21-cr-259 (TSC), (defendant swung a pole at three different police officers on three different occasions, twice striking a police officer in their riot shield and once striking a police officer in his shoulder); *United States v. Young*, 1:21-cr-00291-ABJ-3, (defendant physically pulled two police officers away from other police officers and into the crowd of rioters, where defendant struck the second police officer on his helmet); *United States v. Head*, 1:21-cr-00291-ABJ-2, (defendant hit police officers with stolen riot shields, and then pulled a police officer into the crowd yelling "I got one!"); *United States v. McGrew*, 1:21-cr-00398-BAH, (defendant repeatedly hit police officers, and then threw a "wooden handrail" at an officer which struck the officer).

Second, 51 months' incarceration is not factually analogous to the only other case where the defendant was sentenced to 51 months' incarceration. In *United States v. Swoope*, Case No. 23-cr-20 (TNM), Ryan Swoope sprayed a police officer with chemical irritant, causing the officer physical pain, blinding the officer for twenty minutes, and forcing the officer to seek medical attention. Additionally, Ryan Swoope entered the Capitol Building. Here, Mr. Cholod neither had physical contact with any police officer nor entered the Capitol Building.

### VII.   A Variance is Appropriate as Mr. Cholod Engaged in Aberrant Behavior on January 6, 2021

U.S.S.G. § 5K2.20(b) (Policy Statement) advises that,

> "The Court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."

In January 2021, Mr. Cholod decided to go to Washington D.C. He had little interest in politics, but he did believe that there were irregularities with the 2020 presidential election which garnered his attention. He did not engage in "significant planning," rather he merely decided to come to Washington D.C., to participate in the "Stop The Steal Rally" on the Ellipse. It was only while he was at the rally on the Ellipse, that he decided to proceed to the U.S. Capitol area that afternoon. His criminal conduct that afternoon was of "the spur of the moment" and, for the reasons more fully discussed herein, his conduct represents a marked deviation from an otherwise law abiding life.

-15-

Counsel is aware of another January 6th prosecution, trial and sentencing when "aberrant behavior" resulted in the Court granting a downward variance.

In *United States v. Robert Dennis*, 21-679-JEB, Chief Judge Boasberg granted a downward variance base apparently based on aberrant behavior. The U.S. Guidelines range of imprisonment was 41-51 months, however Chief Judge Boasberg varied downward stating:

> "So I believe the appropriate sentence is 36 months. Now, that's considerably less than the government is asking here. And as I said, I would vary regardless of what the guidelines are, and that's, given your age, your lack of other criminal history, and given what occurred on that day and everything that I saw in the trial, I believe that's the appropriate sentence."

*See* Sentencing Transcript, page 21, 21-679-JEB, 4/13/2023 (copy attached)

Similarly, Mr. Cholod's conduct resulting in his January 6th convictions constitute aberrant behavior from an otherwise law-abiding life. There was no significant planning and his criminal conduct on January 6th was of a limited duration. And what he did on January 6th "represents a marked deviation by the defendant from an otherwise law-abiding life." Therefore, a downward variance is appropriate pursuant to U.S.S.G. § 5K2.20(b) (Policy Statement).

## VIII.  The Kinds of Sentences Available
## and the Defendant's Sentencing Proposal

According to the PSR, Mr. Cholod faces a Sentencing Guidelines recommended term of imprisonment in the range of 51-63, (offense level of 33 and a criminal history category of I). And, Mr. Cholod has herein challenged the PSR  Guidelines range. Of

course, the Supreme Court has ruled that the punishment guidelines set out by the Commission are entirely advisory, so that range of punishment is simply one factor to be considered. Congressional enactment, as opposed to the administrative guidelines from the Sentencing Commission. Undersigned counsel is unaware of anything that might warrant a sentence greater than the most severe punishment advised by the advisory guidelines by the Sentencing Commission. This Court is required to consider other factors set out in 18 U.S.C. § 3553 (a). Of course, the Court need not march through a rote parroting of those factors, and counsel need not drag the Court through such a recitation. The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence and incapacitation.

Here, Mr. Cholod has already been punished in numerous ways, some of which will continue throughout the remainder of his life. He now has a federal felony conviction as a 54 year old, which will directly impact future opportunities, e.g., to get a good job, possess firearms, among other things. His actions have placed him on the news in every living room, not only in his home city area (Tampa, Florida), but throughout the entire country, with many having lumped him together with right wing extremists /groups. The extensive information that is on the internet about him and January 6th will surely follow him for the rest of his life.

As to specific deterrence, Mr. Cholod's likelihood of recidivism is low. He has zero criminal history and is proclivity to commit future crimes just does not exist. A punishment of any lengthy prison time in this case (as recommended in the PSR and by the government) would have the exact opposite effect from what is in the

-17-

interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

Undersigned counsel respectfully submits that a variant sentence below the guideline range is "sufficient, but not greater than necessary, to comply with" the purposes of punishment. Any lengthy term of active incarceration will impose a serious deprivation of his liberty and reflects the seriousness of the offense, promotes respect for the law and provides a just punishment – i.e., a punishment that "fits the crime"—and it also affords adequate deterrence to other similarly situated persons who may be tempted to take the same course of action as Mr. Cholod. It is respectfully submitted that a short period of imprisonment, followed by a one year term of supervised release, and 150 hours of community service, are the realistic outer limits of punishment that may be "sufficient, but not greater than necessary," to impose on Mr. Cholod. And, the sentence proposed herein will protect the public from further crimes of Mr. Cholod.

## CONCLUSION

District Courts have been tasked with crafting sentences that best serve the interests of justice in each individual case. Considering the arguments set forth herein Mr. Cholod respectfully asks this Court to use its discretion to fashion a sentence which takes into account the unique circumstances of Mr. Cholod's conduct, personal history, his aberrant behavior on January 6, 2021, to avoid any sentencing disparities, and the harsh on-going pandemic conditions facing him within the BOP. As discussed

herein the Court should consider and assign a downward variance.

Furthermore, Mr. Cholod has had ample time to reflect on his mistakes, and he is deeply regretful. He should not be considered a future risk to the community and he has been sufficiently deterred from committing future crimes. Mr. Cholod is fundamentally a good person, and there is nothing to suggest that he will be anything other than that moving forward in his life.

At the sentencing hearing, Mr. Cholod may publicly express his remorse and that he recognizes that he will have to live for the rest of his life with the harsh consequences of these felony convictions, both personally and in his pursuit of gainful employment.

Mr. Cholod is ready and willing to comply with all terms of any sentence imposed. He understands and recognizes that even the slightest violation of a sentencing condition may result in another period of federal imprisonment. The prolonged loss of his liberty, including the devastating and irreparable consequences to his family, is more than enough incentive for him to respect and comply with all aspects of any sentence imposed.[3]

As presented herein, the 18 U.S.C. §3553 (a) sentencing factors, (a sentence should be "sufficient but not greater than necessary") to comply with sentencing goals, the Plea Agreement, including the need to avoid unwarranted sentence disparities

---

[3]

    Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a shorter, rather than a longer term of incarceration. As noted in the PSR (¶107) the monthly cost of imprisonment is $4,147.00, $3,980266 community confinement, and $366.00 monthly for supervision.

among defendants with similar records who have been found guilty of similar conduct, as well as the concerns of the court and the community, will be satisfied by proposed sentence herein.

Respectfully, Mr. Cholod asks the Court to impose a variant sentence consisting of, essentially, a short term of imprisonment, one year of supervised release and 150 hours of community service. Such a sentence does nothing to undermine the deterrent effect of sentencing. Neither does such a sentence undermine the statutory need for the Court to underscore, for Mr. Cholod and for the community, the seriousness of the offense for which he is being sentenced. As proposed herein, the sentence appropriately provides just punishment and respect for the law, so that he may continue to be with his family, and continue to live a productive and law-biding life. To do otherwise would be manifestly unjust and a miscarriage of justice.

Mr. Cholod is asking the court to permit voluntary surrnder. As noted on page 5 in the USPO Sentencing Recommendation [ECF 48]:

> "The defendant is a good candidate for voluntary surrender as he is compliant with the conditions of his release, has appeared for all scheduled Court appearances, and is not an apparent flight risk or a danger to the community. 18 USC § 3143(a)(2).

Finally,  Mr. Cholod is asking the Court for the following recommendations:

1.     A judicial recommendation to the Federal Bureau of Prisons that his designation to be FCI Coleman or any other BOP facility in the Florida area. Such a designation will allow his immediate family and friends to visit with him without undue financial or logistical hardship, and

2.      A judicial recommendation to the Federal Bureau of Prisons Mr. Cholod

participate in the following programs: Federal Prisons Industries Program and the

Occupational Industries Program.

Respectfully submitted,

THE ORENBERG LAW FIRM, LLC


_____

Allen H. Orenberg, Bar No. 395519
The Orenberg Law Firm, LLC
200-A Monroe Street, Suite 233
Rockville, Maryland 20850
Tel. No. 301-807-3847
Fax No. 240-238-6701
aorenberg@orenberglaw.com

Counsel to Raymund Cholod

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2024, I caused a copy of the foregoing Defendant's Memorandum in Aid of Sentencing, with Exhibits, to be served by CM/ECF to case registered parties, and by e-mail to USPO Aidee V. Gavito.

_____
Allen H. Orenberg