```
1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
2
   UNITED STATES OF AMERICA,
3                                      Criminal Action
                    Plaintiff(s),      No. 21-CR-00679 (JEB)
4           v.
                                       Washington, D.C.
5  ROBERT WAYNE DENNIS,
                                       April 13, 2023
6                   Defendant(s).

7  ------------------------------------------------------------

8                       SENTENCING HEARING
                 BEFORE THE HONORABLE JAMES E. BOASBERG
9                UNITED STATES DISTRICT CHIEF JUDGE

10 APPEARANCES:

11 FOR THE PLAINTIFF(S):  Jason Manning, Esquire
                          United States Department of Justice
12                        1400 New York Avenue Northwest
                          Washington, D.C. 20005
13
                          Nialah S. Ferrer, Esquire
14                        United States Attorney's Office
                          601 D Street Northwest
15                        Washington, D.C. 20530

16

17 FOR THE DEFENDANT(S):  Allen H. Orenberg, Esquire
                          The Orenberg Law Firm, PC
18                        12505 Park Potomac Avenue
                          Sixth Floor
19                        Potomac, Maryland 20854

20

21 REPORTED BY:           Tammy Nestor, RMR, CRR
                          Official Court Reporter
22                        333 Constitution Avenue Northwest
                          Washington, D.C. 20001
23                        tammy_nestor@dcd.uscourts.gov

24

25
```

1    The following proceedings began at 11:01 a.m.:

2             THE COURT:  Good morning, everybody.

3             THE COURTROOM DEPUTY:  Good morning, Your Honor.  We

4    are here today for a sentencing in Criminal Matter 21-679, the

5    United States of America versus Robert Wayne Dennis.

6             Beginning with counsel for the government, please

7    approach the lectern and identify yourself for the record.

8             MR. MANNING:  Good morning, Your Honor.  Jason Manning

9    together with Nialah Ferrer for the government.  Thank you.

10            THE COURT:  Thank you.  Good morning.

11            MR. ORENBERG:  Good morning, Your Honor.  Allen

12   Orenberg on behalf of Mr. Dennis, who is present.

13            THE COURT:  All right.  Mr. Dennis, good morning to

14   you.

15            Okay.  We are here today for sentencing.  I have

16   reviewed the government's memorandum, the defendant's

17   memorandum, and the letters in support.  I have reviewed the

18   presentence investigation report.

19            And I'm sorry, I should have probation state her

20   appearance for the record.

21            THE PROBATION OFFICER:  Good morning, Your Honor.

22   Hana Field with U.S. Probation.

23            THE COURT:  Thank you for your work on this case.

24            THE PROBATION OFFICER:  Thank you.

25            THE COURT:  All right.  Is there anything preliminary

1  before we begin, Mr. Manning?

2        MR. MANNING:  Your Honor, there are two points of

3  disagreement the government has with the probation report.  I

4  don't know if that's what you are referring to.

5        THE COURT:  Yes.  And I will -- again, they are

6  interesting arguments that the government raises, and I am not

7  going to resolve them because it would not affect my sentence

8  either way.  So I am not going to vary from what the

9  presentence report has indicated are the guidelines.  The

10  government's arguments may well be right.  I'm just not sure.

11  But it's not affecting my sentence, so it's something I don't

12  need to resolve.

13        MR. MANNING:  Thank you.

14        THE COURT:  Thank you very much.

15        Mr. Orenberg, anything preliminary?

16        MR. ORENBERG:  Well, Your Honor, since we have kind of

17  opened the door on those two, I guess, points of controversy,

18  we still stand, on behalf of Mr. Dennis, raising those two

19  objections to the total adjusted offense level and the

20  enhancement for obstruction of justice.

21        THE COURT:  Right.  In other words, you are standing

22  by the presentence report.

23        MR. ORENBERG:  Correct.

24        THE COURT:  Right.  And that's what I'm saying is

25  that, given my sentence is not affected, I will assume that the

1    presentence report guidelines are the correct ones.

2           MR. ORENBERG:  Thank you, Your Honor.  I appreciate

3    it.  I just wanted to make sure the record is clear on our

4    position.

5           THE COURT:  Understood.

6           Mr. Manning.

7           And I have also, again, returned to the slow-motion

8    videos that the government submitted in connection with its

9    sentencing, and I have looked at those again.  So thank you for

10   submitting those.  They were particularly helpful, Mr. Manning.

11          MR. MANNING:  Ms. Ferrer will speak for the

12   government.

13          THE COURT:  Thank you.

14          MS. FERRER:  Good morning, Your Honor.  I'm not sure

15   if the Court can see what --

16          THE COURT:  Not yet.

17          THE COURTROOM DEPUTY:  Once you connect, it should pop

18   up.

19          MR. ORENBERG:  We have nothing over here.

20          THE COURTROOM DEPUTY:  Neither do I.  Once she's

21   finished connecting the USB cable to her laptop --

22          MS. FERRER:  Let me try it again.  I plugged in the

23   HDMI cord.

24          Your Honor, for sake of time.  We will move forward.

25   We understand that the Court has reviewed the memos, and the

1   PowerPoint is pretty much all of the images that we submitted,

2   so we will move forward without the PowerPoint at this time.

3        We will go through the facts very briefly.  We

4   understand that the Court has already reviewed the slow-motion

5   video, and we thank the Court for doing that before the

6   sentencing today.

7        The core of Mr. Dennis's criminal conduct occurred

8   approximately 2:50 to 2:51 p.m. when the Capitol had already

9   been breach and there was a line of MPD officers at the upper

10  west terrace.  Mr. Dennis, he already experienced violence, saw

11  violence on the Capitol grounds, was aware that people were

12  being tear gassed, but continued to aggressively and

13  deliberately approach this line of MPD officers assaulting both

14  Officer CW and Officer JS.

15       After assaulting them, it took over six officers to

16  restrain the defendant, causing them to break away from the

17  line they were holding the mob back from, and creating a very

18  dangerous situation for the officers as well as the members

19  inside the building that they were protecting that day.

20       The guidelines, we presume, are reasonable.  And, Your

21  Honor, we are aware that the Court is inclined to follow the

22  PSR, which gives a recommendation for 41 months.

23       The government submits that the proper guideline range

24  would have been the level 25 with a criminal score of 1, which

25  would give the defendant a range of 57 to 71 months

1  imprisonment.

2          However, Your Honor, however the Court sees fit, we

3  would ask for the midrange of the guidelines to apply here to

4  this defendant.

5          Based on that, we look at the guidelines and we see

6  that his conduct, which the most egregious is assaultive in

7  nature, would give him a base level of 14.  After considering

8  that base level, we have the fact that he assaulted two police

9  officers who are official victims, that would give the plus 6

10  enhancement.

11          Lastly, there was a grouping analysis that we

12  submitted to the Court and an obstruction enhancement that we

13  also argued before the Court in the memo which would give him a

14  level of 25, Your Honor.

15          We understand that the obstruction count the Court is

16  not inclined to apply in this matter; however, we would say

17  that the circumstances of his testimony, the fact that he is

18  not -- the fact that he has not accepted responsibility nor has

19  remorse in this matter is an aggravating factor under 3553(a),

20  Your Honor.  The fact that he deliberately lied --

21          THE COURT:  Let me just stop you for a minute,

22  Ms. Ferrer.

23          The lack of remorse here you are saying should be an

24  aggravating factor under 3553?  Because if that's so, then

25  doesn't everyone who goes to trial and thereby doesn't admit

1    the offense, there should be an aggravator for that?

2         MS. FERRER:  Your Honor, in this particular -- no, I

3    would say not every defendant who goes to trial should receive

4    a higher score because they showed lack of remorse.  However,

5    with this particular case, when the defendant was on the stand,

6    he lied about his interactions with police.  He actually lied

7    about his knowledge about his whereabouts and whether he knew

8    or not that he should be on the grounds.

9         He lied and said that the officers attacked him first.

10   He also lied about the actions that the police took when he

11   first approached the MPD line.  He falsely testified that he

12   only wanted to talk to the police officers.

13        In the video that you saw during trial and from the

14   slow-motion videos that we submitted to the Court for

15   sentencing, he did not speak to police officers, not once.

16   There were multiple opportunities for him to withdraw, to

17   return to the crowd, and Your Honor found that he did have

18   those opportunities and he decided to come back up the steps

19   and assault a second police officer, which is Officer JS in the

20   indictment.

21        So, Your Honor, while we understand that the

22   defendants have the right to trial, they also do not have the

23   right to perjure themselves or testify falsely.  And, Your

24   Honor, we submit that the fact that he did lie multiple times

25   to the Court and the Court actually found him incredible should

1   go towards a higher sentence.

2          THE COURT:  And just so we are clear, a higher

3   sentence under the 3553(a) factors, not a higher offense level

4   under the guidelines?

5          MS. FERRER:  Your Honor, our original argument in our

6   memo was that the obstruction enhancement should apply.  But if

7   Your Honor is not inclined to apply that obstruction

8   enhancement, we believe that those facts and circumstances lead

9   to a higher sentence under the 3553(a) factors, Your Honor.

10         Additionally, Your Honor, there was numerous times

11   where officers have testified during trial about the January 6

12   and the events that occurred and the dangerousness of the

13   defendant's actions and how that had an impact on their day and

14   their ability to -- their ability to complete their jobs and

15   their duties on January 6.

16         Mr. Dennis invited and encouraged others to go with

17   him before he even got to the line of the MPD officers.  Your

18   Honor, that creates a dangerous situation where, if other

19   rioters had followed Mr. Dennis and tried to penetrate this

20   line, they could have had access to the Senate wing doors which

21   we discuss in our memo and in trial was a key breach point for

22   rioters just minutes before the altercation between Mr. Dennis

23   and the police officers.

24         Your Honor, while we understand Mr. Dennis has no

25   criminal history, the fact that his conduct on January 6 was so

1    egregious and serious in nature warrants a sentence within the

2    midrange of the guidelines.

3            Your Honor, additionally, when looking at other cases

4    and defendants who have been found guilty of 111(a), the

5    defendant cites to multiple cases in his memo where defendants

6    pled to 1119(a) and received lower sentences than what the

7    government is currently recommending.

8            Your Honor, we would submit that those cases that the

9    defendant cites to points to defendants who have pled guilty.

10   And Your Honor is fully aware that when defendants plead

11   guilty, they avail themselves to a three-point reduction in the

12   guideline range.

13           That would then put them at a lower threshold or a

14   lower point in the guidelines than Mr. Dennis here.

15           Mr. Dennis did not plea in this case, as Your Honor is

16   aware are.  He went to trial.  He did not avail himself to what

17   would have been a level 20 had he pled out earlier on in the

18   case.

19           Because he did not plea out, he did not receive that

20   three-point reduction, Your Honor.  And that is why the

21   government is recommending the sentence here.

22           The cases that we did cite to in our memo that are of

23   similarly situated defendants, one being the United States

24   versus Mazza, 21-CR-736, where this Court handled the case and

25   the defendant pled guilty to 111 as well as a firearms offense,

1    this defendant, just like Mr. Dennis, witnessed violence on the

2    Capitol grounds and assaulted officers, this Court sentenced

3    Mazza to 60 months' imprisonment.

4           THE COURT:  He also brought two guns to the

5    insurrection.

6           MS. FERRER:  Yes, Your Honor.  We understand that that

7    is a difference between this case and the case of Mazza.

8    However, that defendant pled out pretty early on and received a

9    three-point reduction.  Had he not pled out and he was found

10   guilty, he would have received a higher sentence than the 60

11   months.

12          Additionally, the case of United States versus

13   Richardson, 21-CR-721, the defendant stormed the police line,

14   very similar to our defendant's criminal conduct here.  He was

15   a 70-year-old man.  And after he stormed this line, he struck

16   police officers multiple times.  And he also encouraged a group

17   of rioters to carry a large billboard and crash it into the

18   line of officers.  That defendant also pled guilty to the

19   111(a), and he was sentenced to 46 months' imprisonment.

20          So, Your Honor, as you can see here, even when the

21   defendants are pleaing, they are still getting within the

22   guideline range that is very similar to what we are

23   recommending for this defendant.

24          Additionally, Your Honor, there's another case that

25   the government cited in their memo for United States versus

Miller, 21-CR-119.  The defendant grabbed an officer's baton

and pushed back against officers, very similar conduct to

Mr. Dennis's conduct in this case.  He pled guilty to a 111(a)

and a 231 as well as multiple misdemeanors, which we also have

in this case.  His guideline range was significantly lower

because he pled out early.  And that was a 37 to 46 month

range.

Judge Nichols ended up sentencing this defendant to 38

months, and that was due to -- mostly due to the fact that

he -- this defendant spent a large amount of time in D.C. jail

prior to the trial taking place.

Your Honor, there are multiple aggravating factors

here that we previously listed, but we would like to focus

mostly on the fact that the testimony of Mr. Dennis was

completely false and incredible and which the Court found that.

Additionally, his assaultive conduct was very

egregious in nature.  It caused a dangerous situation for the

officers involved.  The officers testified to different

accounts of how that was dangerous for them in regards to their

weapons not being secure.  Officer JS also testified as to his

baton being knocked out of his hands and how dangerous that was

if another rioter was able to get access to his weapon.

There were multiple accounts of how dangerous

Mr. Dennis's actions were, not just because they were an

assault, but because of the environment in which they were

1  happening in, which was January 6 with thousands of rioters and

2  multiple breaches of the Capitol building right behind the

3  officers who were standing on that line.

4          So while we understand there are other arguments that

5  defense has made, the government submits that these aggravating

6  factors warrant a sentence within the midrange of the

7  guidelines, Your Honor.

8          THE COURT:  Thank you very much.

9          MS. FERRER:  Thank you.

10          THE COURT:  Mr. Orenberg.

11          MR. ORENBERG:  Good morning, Your Honor.

12          THE COURT:  Good morning.

13          MR. ORENBERG:  As the Court and counsel are well

14  aware, Mr. Dennis is asking this Court to impose a probationary

15  term for its sentence coupled with significant community

16  service hours.

17          And recently, and I didn't have time to amend the

18  report this morning, Mr. Dennis has indicated to me and he

19  wanted me to relate this to the Court directly, that he is

20  willing to forgo or waive his right appeal if the Court does

21  impose a term of probation.

22          Your Honor --

23          THE COURT:  I think even you, Mr. Orenberg, at page 12

24  of your memo say that Mr. Dennis's criminal conduct was similar

25  to Mr. Sargent, who received 14 months.

```
1            So a probationary sentence here, and you are an
2    experienced and strong advocate, but a probationary sentence
3    here is simply not in the realm and would be a huge disparity
4    from what other similar defendants have gotten.  So that's just
5    a steep, steep hill for you.
6            MR. ORENBERG:  Your Honor, I think the Court needs to
7    separate myself from Mr. Dennis on this very narrow point.
8    Mr. Dennis has asked me to request the Court for a probationary
9    term.  Okay?
10           As you said, and I thank the Court's compliments about
11   strong advocacy and so forth, but I wanted to point out to the
12   Court by these three other cases, which admittedly those
13   gentlemen did plead guilty, okay, there is a difference there,
14   but I wanted to give something to the Court to compare and
15   contrast.  That is why I submitted those cases, the Sargent,
16   the Council, and the Miller case.
17           THE COURT:  Sure.
18           MR. ORENBERG:  But, Your Honor, you know, I take a
19   little bit of a point of disagreement with the government
20   that -- and it's true that Mr. Manning contacted me a couple
21   weeks ago and said that they were going to seek the enhancement
22   for obstruction of justice because in their view, they feel
23   that my client willfully lied on the stand.
24           And as the Court can see from my response, that's not
25   my recollection of events or my interpretation of how he
```

1    testified.

2         Now, the Court was the fact finder in this case, so

3    the Court obviously had the best position to assess my client's

4    credibility, not once, but twice because he testified in the

5    suppression hearing also.

6         And the Court, as I said, is in the best position to

7    assess his credibility.  But I would suggest to the Court and I

8    urge the Court not to consider, I guess, the arguments of the

9    government in this regard because what Mr. Dennis did from the

10   stand, whether it's here or it was over in your other

11   courtroom, was truthfully and candidly tell Your Honor what had

12   happened some two years ago.  Okay.

13        Now, obviously he's been thinking about it during

14   those past two years.  And those events that occurred on those

15   steps were very hectic, very chaotic, very muddled.  We went

16   back and forth through the films in realtime and slow time, all

17   of that, and it was subject to interpretation.  And we abide by

18   the Court's decision, the Court's interpretation, on where it

19   came down on what happened as told by the film itself and the

20   testimony of, not only Mr. Dennis, but the others.

21        But he had -- Your Honor, the Court also heard from

22   Mr. Dennis.  And I think the Court now has seen from the 11

23   letters that have been submitted on his behalf as well as my

24   arguments to the Court or my remarks on behalf of Mr. Dennis

25   during the trial, that he is a God-fearing man.  He is a deeply

religious man.  He's not a man who lies.  He's not a man who's even prone to lying.

And for the government to suggest that he somehow was willfully misleading this Court three months ago during the trial, it's just -- it's astounding.  That is not what happened.  He told the Court truthfully and candidly his recollection of the events that day.  Okay.

Now, also, and I think the Court already dealt with this issue, but, of course, every defendant has a right to go to trial.  And just because the defendant has exercised that right, he should not be penalized, I should say.

Mr. Dennis, from the beginning, from the very moment I met him, my very first conversation with him, he said, I want, you know, I want to go to court, I want to go to trial.  Okay.

Sure, we had a plea offer and we had many discussions about the plea offer.  And I gave him the benefit of my wisdom and counsel what it would mean to plead guilty other than going to trial and all of that.  And Mr. Dennis will tell you if you ask, I was still bringing that up just short of the commencement of the trial.

But Mr. Dennis exercised his constitutional right to go to trial, and he should not be penalized for doing so.

The other think I want to the say about the obstruction argument, United States Probation Officer Hana Field in the presentence report tells the Court, tells us,

1  tells counsel that she went and looked at the transcript of his

2  testimony, and in her professional view, and she's a seasoned,

3  well-regarded United States probation officer, it did not

4  provide the basis for inserting the two-level enhancement for

5  obstruction of justice for testifying falsely at trial.

6    Now, I already alluded to the fact that almost a dozen

7  members of his community and a wide range of members of his

8  community submitted letters on Mr. Dennis's behalf.  The Court,

9  not only got, as I said, a picture of Mr. Dennis when he

10  testified, but now has, I think, a clearer understanding of who

11  this man is.  Okay.  The 62-year-old man, heretofore January 6,

12  2021, never in trouble in his life, deeply religious, as I have

13  already said, deeply devoted to his family and to his friends.

14    You know, whether it's from members of his church,

15  members of his community, employers, colleagues, and so forth,

16  even one of his letters, and the name escapes me right now,

17  said, we have different political views, but I still, I like

18  this man.  I respect this man.  He's a family member.  He has

19  six children.  He has grandchildren.  The Court is well aware

20  of all of that.

21    He has an 88-year-old father, yeah, 88-year-old father

22  who is in marginal health who Mr. Dennis tells me that, you

23  know, being away from him for the next few years will probably,

24  you know, deny him the opportunity to be with his ailing father

25  in his final days.

1        I understand the Court has a duty to impose a sentence

2   in accordance with the 3553(a) factors, but I think the Court

3   needs to take into consideration this is not a man who is going

4   to recidivate.  Okay.  This is a man who, when he goes back to

5   the community, if the Court finds the way to do that today, to

6   allow him to remain in the community or somewhere down the

7   road, he's never even going to get a speeding ticket.  You are

8   never going to see him again, Your Honor.

9        Your Honor, I also put arguments in there about the

10  conditions of -- or the COVID-19 -- ongoing COVID-19 conditions

11  at the Bureau of Prisons.  And as I informed the Court and

12  counsel, I checked on the Bureau of Prisons' website just the

13  past week or so, and it's a little muddled, but apparently they

14  are still on modified lockdown status nationwide.  But each

15  institution itself can make those decisions as to what level of

16  modified lockdown status vis-a-vis the COVID-19 health

17  situation they choose to employ.

18       So obviously I could make a specific argument that

19  this specific --

20       THE COURT:  Also, I think the President has just

21  signed legislation ending the national emergency, which will be

22  as of -- for COVID.  So I think that it's unlikely that it will

23  be a significant issue at any facility, I think.

24       MR. ORENBERG:  Well, be that as it may, as I was going

25  through the website a few weeks ago, and I have done this in

other cases too, and I, of course, take a look at the -- they

track the number of fatalities that are caused by COVID, I

mean, there was one.  There was one additional death in the

past month from COVID somewhere in the Bureau of Prisons.  They

don't tell you where.  So it's an ongoing concern.

I understand, yes, that the national emergency is

going to be over.  I understand that the, I guess, the benefits

of the CARES Act that this Court and I and Mr. Manning and

Ms. Ferrer enjoy as attorneys where we can stay in our offices

and conduct hearings, I see you're nodding, may be coming to an

end soon.

THE COURT:  Next month, I fear.

MR. ORENBERG:  Right.  And that's going to -- I

digress, but it's going to create an additional logistical

burden upon the Court.

THE COURT:  It is.

MR. ORENBERG:  I know you have the wisdom and the

wherewithal to see how we are all going to deal with that.  Be

that as it may, I make this argument because, if he is sent to

the Bureau of Prisons, he is going to be subject to these, at

least for the time being, ongoing additional restrictive

conditions that affect all aspects of life within the Bureau of

Prisons.  And I think that the Court should take that into

consideration when imposing the appropriate sentence.

Your Honor, I don't have much more to say, but

```
 1    Mr. Dennis does want to address the Court.
 2             THE COURT:  Okay.  Thank you very much.
 3             MR. ORENBERG:  Okay.
 4             THE COURT:  Mr. Dennis, would you like to say
 5    anything?
 6             THE DEFENDANT:  Yes, Your Honor.
 7             THE COURT:  Okay.  Step right on forward.
 8             THE DEFENDANT:  I simply want to say this.  I simply
 9    want to say that I stand before you a man with a clear
10    conscious because I know I did nothing wrong.  Most
11    importantly, God knows I did nothing wrong.  I just want to the
12    go home to my family and put this all behind me.  That's all I
13    have to say.  I'm at your mercy.
14             THE COURT:  Okay.  Thank you very much.  You may have
15    a seat.
16             I find that the guidelines here are presumptively
17    correct, 41 to 51 months.  Again, as I say, the sentence I am
18    imposing I would impose regardless of whether those were the
19    correct guidelines or whether the government's guidelines were
20    correct.  I am very well aware of the 3553(a) factors and I
21    don't need to go through those.
22             Mr. Dennis, in your favor, you are now 63.  I think
23    people keep saying 62, but at least I think you're 63 now,
24    right?
25             THE DEFENDANT:  Yes, Your Honor.
```

1          THE COURT:  And right.  You have had no run-ins with

2     the law before, that you have been law-abiding.  You seem that

3     you have been a father for your six children, that you have had

4     steady employment, that you also have a number of people in the

5     community who wrote letters for you.  Mr. Orenberg talked about

6     those.  And that's important to me that I see that you are

7     someone who is respected and liked in the community.

8          On the other hand, I have no idea what caused you to

9     do what you did on January 6, and you apparently don't either

10    since you still believe you did nothing wrong.  But you did

11    something wrong.  You did something seriously wrong.  You were

12    part of a mob that was part of an insurrection that attempted

13    to block the peaceful transfer of power, which is a cornerstone

14    of our democracy, that you were willingly part of that group

15    that went and were there to block the election of President

16    Biden.

17         But it wasn't just that.  It's that, instead of just

18    being a part of that group, when the police formed its line to

19    bar people from the Capitol, you, without any warning, without

20    any reason, approached that line and put your hands on the

21    officers.  And when you were pushed back, you came back to the

22    officers.

23         And there's no doubt that you were the one who

24    suffered more of a beating.  You suffered more injury than

25    anyone else did that day.  But there was no reason.  There was

1  no excuse for you to do what you did.  And even as you told the

2  FBI, you don't know what you were doing that day, that you were

3  trying to make a football rush.

4          And although on the stand and today, you still don't

5  believe you did anything wrong, you did.  And those who

6  assaulted police officers, interfered with officers doing their

7  duty, pay a price.  And it's not just to deter you from doing

8  this again, which I agree with Mr. Orenberg, I don't think you

9  will, but we can't have anybody engaging in this conduct in our

10  country if we want to remain in a democracy.

11          So I believe the appropriate sentence is 36 months.

12  Now, that's considerably less than the government is asking

13  here.  And as I said, I would vary regardless of what the

14  guidelines are, and that's, given your age, your lack of other

15  criminal history, and given what occurred on that day and

16  everything that I saw in the trial, I believe that's the

17  appropriate sentence.

18          And it's lower than a number of people in your shoes

19  have gotten.  And you may think it's a long time.  And it is.

20  It is a long time.  But it's not as long as a number of other

21  people in your shoes have gotten.  And you never accepted

22  responsibility for this.

23          So I believe that's the appropriate sentence.  And I,

24  therefore, sentence the defendant to 36 months.  And that

25  consists of concurrent terms of 36 months as to Counts 1, 2,

and 4; 12 months as to Counts 5 and 7; and 6 months as to
Count 9, as I said, all terms to run concurrent.

You are further sentenced to serve a concurrent
24-month term of supervised release, which consists of 24
months as to Counts 1, 2, and 4 and 12 months as to Counts 5
and 7.  Additionally, you are required to pay a special
assessment of $350.

While on supervision, you shall abide by the following
mandatory conditions as well as all discretionary conditions
recommended by probation in part D, sentencing options of the
presentence report.

And these mandatory conditions include not committing
other federal, state, or local crimes, unlawfully possessing a
controlled substance, submitting to one drug test within 15
days of placement on supervision, and other drug testing as
required by probation, cooperating in the collection of DNA,
and restitution in the amount of $2,000, which will be paid at
a rate of $100 per month following release.  Also I will
require 60 hours of community service within those 12 months.

I will waive substance abuse treatment, financial
restrictions, and financial information disclosure.  I will
require a reentry progress hearing within 60 days of release.

I find you do not have the ability to pay a fine, and
I, therefore, waive any imposition of a fine.

You do have a right to appeal your convictions.  You

1    are required to file any notice of appeal within 14 days after

2    the entry of judgment.  If you are unable to afford the cost of

3    appeal, you may request permission from the Court to file an

4    appeal without cost.  You may also apply for court-appointed

5    counsel if you cannot afford counsel.

6            You also have the right to appeal if the sentence was

7    imposed in violation of law or as a result of an incorrect

8    application of the sentencing guidelines or if you received

9    ineffective assistance of counsel at your plea or sentencing.

10           Do you understand all that, Mr. Dennis?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Any objections to the sentence imposed not

13   already stated, Ms. Ferrer, Mr. Manning?

14           MS. FERRER:  No, Your Honor.

15           THE COURT:  Mr. Orenberg?

16           MR. ORENBERG:  No, but --

17           THE COURT:  I'm sorry.  Point of clarification, and

18   then I am happy to hear a recommendation on facility and also a

19   surrender date.  Waive any interest on restitution.

20           Is there a facility you would like me to recommend?

21           MR. ORENBERG:  Yes, Your Honor, within the geographic

22   area of Dallas, Texas.

23           THE COURT:  All right.  Recommend placement in a

24   facility as near to Dallas, Texas as possible.

25           MR. ORENBERG:  Within my memo, I mentioned two

```
 1   programs within the Bureau of Prisons that seems to be in line
 2   with Mr. Dennis's livelihood.
 3            THE COURT:  Right.  I see.  I recommend federal
 4   prison's industry's program and occupational industry's
 5   program.
 6            MR. ORENBERG:  Right.
 7            THE COURT:  And then, government, opposing
 8   self-surrender?
 9            MS. FERRER:  No, Your Honor.
10            THE COURT:  Okay.  How long would you like,
11   Mr. Orenberg?
12            MR. ORENBERG:  60 days, Your Honor.
13            THE COURT:  All right.  I will say self-surrender no
14   earlier than June 13.
15            MR. ORENBERG:  Which I believe is a Wednesday, middle
16   of the week.  It's a week day.
17            THE COURT:  Anything else from the defense?
18            MR. ORENBERG:  Yes.  The Court mentioned a reentry
19   progress hearing.  I know it's going to be somewhere down the
20   road, but given the fact that he lives outside of Dallas --
21            THE COURT:  I am happy to do that remotely.
22            MR. ORENBERG:  Remotely.  Thank you, Your Honor.
23            THE COURT:  All right.  Thank you very much.
24            Ms. Field, yes.
25            THE PROBATION OFFICER:  Your Honor, just to confirm.
```

1           Thank you.  I know the Court waived the substance

2    abuse treatment.  What's the Court's position on the testing?

3           THE COURT:  I will waive testing.

4           THE PROBATION OFFICER:  Okay.  Thank you, Your Honor.

5           THE COURT:  Thanks very much.

6           That you, Mr. Manning, Ms. Ferrer.

7           Mr. Dennis, good luck to you.  I will see you when you

8    get out, and I trust that you will resume your life as a

9    law-abiding citizen.

10          (The hearing concluded at 11:37 a.m.)

11                           - - -

12               C E R T I F I C A T E

13

14          I hereby certify that the foregoing is an

15    accurate transcription of the proceedings in the

16    above-entitled matter.

17

18

19    5/10/23              s/ Tammy Nestor
                           Tammy Nestor, RMR, CRR
20                         Official Court Reporter
                           333 Constitution Avenue NW
21                         Washington, D.C. 20001
                           tammy_nestor@dcd.uscourts
22

23

24

25